# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| ANGELA MARIE JOHNSTON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-16-250-RAW-SPS |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

The claimant Angela Marie Johnston requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on April 23, 1975, and was thirty-nine years old at the time of the administrative hearing (Tr. 49, 202). She graduated high school, completed training as a registered medical assistant, and has worked as a receptionist, medical assistant, and production assembler (Tr. 41, 221). The claimant alleges she has been unable to work since April 30, 2008, due to rheumatoid arthritis, osteoporosis, bipolar disorder, PTSD, thyroid problems, and female problems related to a hysterectomy and endometriosis (Tr. 220).

**Procedural History**

On August 28, 2013, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated January 26, 2015 (Tr. 29-43). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ found that the claimant had the residual functional capacity ("RFC") to perform a range of sedentary work as defined in 20 C.F.R. § 416.967(a), *i. e.*, she could lift/carry a maximum of ten pounds occasionally and less than ten pounds frequently, stand/walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday, but that she required a sit/stand option defined as a temporary change in position every twenty minutes and without leaving the workstation as to not diminish pace or production. He further found that she was precluded from working at unprotected heights and around dangerous moving machinery. Finally, he limited her to simple tasks with routine supervision and occasional contact with coworkers and supervisors but no work-related contact with the general public (Tr. 35). The ALJ thus concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, final assembler, document preparer, and touch up screener (Tr. 41-42).

**Review**

The claimant's sole contention of error is that the ALJ improperly rejected the opinion of her treating physician, Dr. Teresa Farrow. The undersigned Magistrate Judge finds this argument persuasive, and the decision of the Commissioner should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of rheumatoid arthritis (RA), osteoarthritis, migraines, vertigo, attention deficit/hyperactivity disorder (ADHD), anxiety, posttraumatic stress disorder (PTSD), panic disorder, and reading

disorder (Tr. 31). The relevant medical evidence related to the claimant's mental impairments reflects that the claimant's treating physician noted her panic disorder without agoraphobia, and that her symptom complex included apprehension (Tr. 335). Treatment notes from Carl Albert Community Mental Health Center (CACMHC) reflect that in 2011 the claimant reported she was not doing well after missing an appointment and having some added stressors in her life (Tr. 438-440). By January 2012, the claimant was compliant with her medications and had no side effects and in April 2012 was noted to be much less depressed and anxious, although still having flashbacks and nightmares regarding past abuse (Tr. 426-430). Although she complained of difficulty with attention and concentration, she also reported that medications were "really helping" (Tr. 424). In September 2012, the claimant's bipolar disorder was described as better but still severe, and her panic disorder, PTSD, and ADHD were noted to be better, along with sleep, appetite, attention, and concentration improving (although still limited by her reading disorder) (Tr. 422). By 2013 (when claimant filed her application), treating physician Dr. Teresa Farrow noted that the claimant's depression and anxiety were better but still symptomatic (Tr. 407-416). In 2014, treatment notes reflect the claimant started to do worse, and her depression, anxiety, and panic had worsened (Tr. 579). Some notes reflect she was stable, but notes in October 2014 reflect the claimant was worsening and off her medications (Tr. 588-589).

On November 2, 2013, Dr. Farrow completed a Mental RFC Questionnaire for the claimant, noting that her Axis I impairments were panic disorder with agoraphobia, moderate bipolar disorder, PTSD, ADHD, and reading disorder, and that the claimant had

a Global Assessment of Functioning (GAF) score of 43 (Tr. 449). She noted the claimant's symptoms were characterized by depression, panic attacks, and anxiety, and that she had a guarded prognosis (Tr. 449). She checked boxes indicating that the claimant had twenty signs and symptoms including difficulty thinking and concentrating, emotional lability, and easy distractibility (Tr. 450). She indicated that the claimant had no useful ability to function in the areas of: completing a normal workday and workweek without interruptions from psychologically based symptoms, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, responding appropriately to changes in the workplace, and dealing with normal work stress. She further noted that the claimant was unable to meet competitive standards in five other areas, including maintaining attention for two-hour segments (Tr. 451). She stated that, due to severe mood swings and anxiety, the claimant was unable to work, and she opined that the claimant would miss more than four days per month of work (Tr. 452-453). .

On April 27, 2011, Dr. Kathleen Ward conducted a mental status examination of the claimant (Tr. 570). Dr. Ward noted the claimant was genuinely sad and that anxiety was the predominant feature, her thought processes were logical and organized, she was considered to have average intellectual abilities, and she had no noted deficits in social judgment and problem solving (Tr. 572). Dr. Ward noted that the claimant appeared to have emotional instability, anxiety, and a pattern of unstable relationships that accompanies complex PTSD, and assessed the claimant with complex PTSD and a mood

disorder, NOS (Tr. 573). She noted that the claimant's prognosis would improve with the addition of talk therapy to help process her traumatic history (Tr. 573).

State reviewing physicians found that the claimant was moderately limited in the ability to carry out detailed instructions and maintain attention and concentration for extended periods, and that she was markedly limited in the ability to interact appropriately with the general public (Tr. 95-96). Dr. Julian Lev concluded that the claimant could perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation, but that she could not relate to the general public (Tr. 96). Another reviewing physician agreed with this assessment on reconsideration (Tr. 113-114).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence in the record. Specifically, he summarized her mental health treatment records, including Dr. Farrow's Mental RFC assessment (Tr. 38-41). The ALJ noted that he incorporated her findings that the claimant could perform simple tasks with routine supervision and relate to supervisors and peers on a superficial work basis but could not relate to the general public; however, he found that the GAF of 43 was inconsistent with the clinical findings in the records and not entitled to substantial weight (Tr. 40). He noted that she was doing well on her medications, mental status examinations were normal with normal affect and mood, her attention and concentration and panic attacks had improved with medications, and she obtained a certificate as a registered medical assistant in May 2013 (which was prior to her application date) (Tr. 40). The ALJ therefore afforded some weight to Dr. Farrow's opinion, but found that it

was less persuasive in light of inconsistencies in her own treatment records and the rest of the medical evidence (Tr. 40).

The claimant first contends that the ALJ failed to properly analyze Dr. Farrow's opinion as the claimant's treating physician. The undersigned Magistrate Judge agrees. As she was a treating physician, the ALJ was required to give her opinion controlling weight if it was "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [404.1527 and 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th

Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *Watkins*, 350 F.3d at 1301 [quotation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by her treating physicians. Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it to Dr. Farrow's treating records and opinion. First, the ALJ's opinion failed to take into account that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759 (10th Cir. 2005). *See also Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("[A] psychological opinion does not need to be based on 'tests;' those findings can be based on 'observed signs and symptoms.' Dr. Houston's observations of Ms. Wise do constitute specific medical findings."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004), *citing* 20 C.F.R. Subpt. P, app. 1 § 12.00(B). Furthermore, the ALJ's assessment was improper because he appeared to adopt the findings of the state reviewing physicians and Dr. Ward's rather conclusory assessment but failed to explain why he did not consider the consistent treatment records indicating that the claimant's problems with attention and concentration, as well as panic attacks and persistent depression and anxiety even when on her medications. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using

portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984). This is also problematic because it indicates that the ALJ did not conduct a proper longitudinal assessment of the claimant's impairments but focused on times when exams had more positive results and ignored the times when the record reflected decompensation. 20 C.F.R. § 404.1520a(c)(1) ("Assessment of functional limitations . . . requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation.").

In addition, although the ALJ found the claimant had the severe mental impairments including ADHD, PTSD, and panic disorder, he also erred at step four when he failed to explain how these severe impairments were accounted for by a finding that she was "limited to simple tasks with routine supervision and occasional contact with coworkers and supervisors but not work-related contact with the general public." *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. Indeed, the ALJ devoted much of his discussion at step four to questioning his determination at step two, *i. e.*, the severity of these impairments. Instead, the ALJ should have explained why the claimant's severe

mental impairments did not call for corresponding limitations in the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984).

Accordingly, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly evaluate *all* the evidence in the record. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 22nd day of August, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**